The next case for argument is 22-1745 Veterans Legal Advocacy Group v. McDonough. May it please the Court, for more than five years, the VA has repeatedly mailed Vet-Lag's documents to the wrong address. The VA did this regardless of the many hundreds of times Vet-Lag tried to tell the VA, hey, this is the incorrect address, please mail it to our current address. Vet-Lag had changed the address correctly per VA policies. Can I, okay, we're well aware of what went on here. I guess one of the things I'm unclear on is that I understood your petition, your initial petition to deal with a fairly discreet issue, which is your mail was being sent to Alaska and to Indiana, prior locations for your group, and now you're in Virginia and somehow I appreciate that you maybe have been very frustrated because you couldn't find a way to get the VA to change the addresses for the attorneys. And they kind of arguably fixed that. Now you raise a few things that are still problematic in blue and in gray. I think it, can you explain to me how those coincide with the groundment of your initial  I think you can describe it by one instance where they continued not to do that. We have learned of, since we've been at this court, we have learned of a few more documents that have been sent to Alaska and Indiana. We don't. At the time you filed your appeal to this court, at some point we've got to cut off the time limit for what we're looking at. Understood. So at the time you filed your appeal to this court, was it just one? Was it a handful? I'm not leading you. I just want to know. I only saw, my recollection from the briefing is that it was only one. And then you had other examples and I'd like you to get into those problems. Your Honor, there's no doubt the issue improved. Like we did start, as far as we know, receiving more of our mail at our current correct address. As far as Indiana and Alaska, our complaint wasn't specifically for those addresses. It was that the VA should not be sending mail to any wrong address. And that was... Well, yes, in theory. But I thought the focus was really on what they had done here and they were going to fix it. The other, but you do raise, and I just want to be clear on that, in your appeal here, other stuff where you say there have been errors or problems, and one of them deals with calling an attorney, esquire versus attorney, and then there's another one about the way the address in Virginia is laid out. Did those problems or missteps result in the mail not getting to where it was supposed to go? No, Your Honor. We're not complaining about the different iterations of our names, our addresses. That's not a problem. All that does is prove that their argument or their position, whatever you want to call it, that they have changed these two systems and magically everything's showing up. So you're not complaining about that. Correct. You're complaining about the fact that it's not moved because as a practical matter, you've identified one or a handful of correspondents that were sent to the Alaska address or to the wrong address? I think we had one in the time period between the court's decision and our motion for reconsideration. But we've had many since. What does many mean? Twenty, maybe? I don't know. Just this week? Well, I don't know. My understanding of the record is that at the time when the VA finally buckled down and said, we're going to clear this up, and they did the stuff with the two systems and the two databases, and they also said, give us all your names, give us all your information, and there were 233 names, and that there were some missing, some deleted, some gone. So there was still a discrepancy. The VA wasn't quoting, we've gotten every single one because they didn't get the information from you for every single one, right? Am I understanding the way? That is correct, Your Honor. Okay. So what is remaining? What is left? What did you not get? No system is going to ever be 1,000%. You've identified problems since then. But I think you characterized those as not being the kind of problems that means that the mail goes to the wrong place. So why don't you essentially get pretty much what you were asking for? Because Your Honor, first, we don't characterize it as these addresses, these fixes mean that the address is wrong and we're just still going to get whatever we're going to get. There is definitely mail we're not getting because they're still using wrong zip codes. They're using the wrong office numbers. Sure, if they spell my name right or wrong, it's going to show up in our office. And are these having anything to do with Alaska or Indiana or are there other addresses? I don't know how many things are still being sent to Alaska or Indiana. We only learn of them when our clients tell us. I think most of my clients that I represented while I lived in Alaska or while we had the post in Indiana, most of those clients have gone off my docket. They're no longer with us because their cases have resolved. So we really, it seems a little unclear what's going on and this would be probably in perpetuity. I mean, you know, next year, two years from now, you might get a misstep too. Why didn't you, if you've got a group of things that have been misdirected since the board decided, the CABC decided this, is there anything that would preclude you from filing an additional mandamus petition? If you had a sufficient basis to say, well, look, they fixed some of the problems, but here are these lingering problems, mandamus petition. First of all, Your Honor, I don't think we need to do that because the fact that there's ongoing problems. That wasn't my question. Okay. That way, we'd have to hire another counsel to just handle that and that would be that counsel's job. I mean, my paralegal already spends a significant amount of time just telling the VA, wrong address or, hey, we're missing these documents. We are sending letters to the VA all the time still. We're missing these documents. So you're not precluded from doing it, but you're saying you don't want to do it because it would be very time consuming? We're financially precluded, Your Honor. We are a nonprofit. We don't have the money to hire an attorney just to bother the VA and file a petition saying, hey, they mailed documents to the wrong address. We do do that for probably about 20 times. We've done it over the years before this petition where we would say, hey, we haven't received this document, and the VA would often in the petition give us the document. We'd find, oh, that document was mailed out to the wrong address four years ago, and then we spend five years litigating whether the appeal of that document is on time. I've had several clients die during this litigation. So do we not want to do it? Of course not. Can we? Financially, no. We could not. Why is it more costly to file a new mandamus petition than to appeal this and then get us to remand and then refile at the Veterans Court all the new subsequent information of events that occurred after it issued its original Veterans Court decision? Let's just say I'm going to spend on just this Federal Circuit appeal 100 hours, maybe 150. I don't know. A lot, but if I filed a petition every single time that we learned of the VA filing or sending mail to the wrong address, and just this week we had two more, and we had to file petitions for those, and we don't know what we're missing. When you figure out that it's been sent to the wrong address, did you call someone? Are they completely unresponsive to help you? You mean call someone at the VA, Your Honor? Yeah. No, there's no one to call at the VA for that, Your Honor. Well, I thought there was part of the system is that there's something on their website, and you're supposed to notify them. So you say on your end, you've done everything right, 100%, and it's still not working, and then you can't get it rectified other than by filing a mandamus petition? Correct, Your Honor. That is what we're saying. We have filed over 380. I looked it up yesterday. Over 380, at least in just the past few years, notices to the VA, hey, you've sent this to the wrong address. Please fix the address in this client's file, or please fix our address, or this attorney doesn't work here. I don't know why you're sending us his money. It happens for various systems in the VA, so we get other attorneys' checks. Attorneys get our checks. So did you put that on to the CAVC? I mean, as I understand what went down here is they came in, and they certainly did more than nothing. They brought people in. They changed their databases. They confirmed it. They put a thing on the website telling lawyers what to do. I thought the record indicated that of the 234 lawyers you had, they confirmed their addresses with you and fixed all of that. That doesn't account for the 50 or so clients that have hired us in the last two years, Your Honor. And that was a snapshot in time. They went in by hand and fixed them. But that snapshot in time isn't reality moving forward. I guess if I was a Veterans Court judge and I had to issue a decision on your petition, what was it? I mean, at that point in time, after the VA came in with all of its affidavits and all of its explanations of updating its databases and then providing a means for attorneys to do other things to update the databases, why wasn't it reasonable for the Veterans Court to believe in that snapshot of time? We have a solution here, and now the petition is moved. When the VA high-level officials submitted their affidavits, those affidavits are read closely. They don't say that they solved anything. They just said, maybe they're right in these two databases, but I don't really know because I don't control those databases. They didn't even list the databases. Let's just take it for granted. Again, if you're the Veterans Court judge, you see these affidavits come in saying that the databases have been updated, so there's no reason for this correspondence to any of it to end up in Alaska or Indiana because now we've got the right address in the databases for each and all of these different clients. And then you had an opportunity, a 10-day window, to respond to that. You didn't respond to that. And then the Veterans Court, I mean, what are they supposed to think at that point? They think, look, it looks like there's a viable solution here. No one's telling us why it's not a viable solution, so I'm still struggling to think about why at that moment in time, when the Veterans Court had to issue a decision, why was it unreasonable for it to think that this case is unmoving? Because, Your Honor, at that time, no one told the Veterans Court that the problem was solved.  They don't say that. They don't say in the magic words problem solved, but just take it for granted right now for purposes of this question that those affidavits come off as sounding reasonable in correcting what had been identified as the earlier problem, that the database wasn't getting updated. Now it's been updated. So just put that to the side. And, again, I didn't see your side come in in that 10-day window saying that these affidavits are flawed because they don't say that they solved the problem. I'm just trying to think about this from the perspective of the Veterans Court judge. Everything that was in those affidavits we had addressed before those affidavits. We had already told the Veterans Court, listen, if they come in and say they draw from one or two or three databases, it's not true. There are, like, 14 databases at least. There's also VA employees. Do you want the VA to take? What additional steps do you actually want the VA to take that are reasonable under the circumstances? I think the VA should tell its employees and probably control its employees a little more so that they don't use their own personal address list that they keep on Excel spreadsheets. I think it should tell its employees pull the address from the corporate database every single time, not when you feel like it, not when you have this document from 2014 and you're going to pull that address and write it on an envelope. I think that would be a better solution, Your Honor. Wouldn't you have said that, though? I mean, the CNBC goes through what the affidavit said, that they've identified it, they've put the right names in it, they've corrected all of the addresses, getting information from you. So did you stand up and say, well, that's still not fixing the problem because they are not supervising their employees in a way in which the employees are actually, I'm not quite understanding what you're saying, but that the employees aren't even using the databases. They're using stuff that's in their drawers to get this. Yes, Your Honor. We have said that multiple times in our filings throughout the year of litigation. I mean, there's a lot of motions practice here, a lot of filings from us saying. But after they come in and they say, here, we fixed it. I mean, it sounds, when you read what the CNBC said, it sounds like they were presented with these affidavits. This is what we're going to do with the system. They had gone to you. They had taken the 200 names you had given them. They had verified the new addresses and the correct addresses. And it seemed like they were tackling in a substantial way what you had really, the gravamen of your complaint, which is they're sending these not to Arlington or Virginia, but they continue to send them to Alaska. So why didn't you get up and say, well, I don't think that's going to fix the problem? We had already said it, Your Honor, so many times. All I'd be doing is repeating myself. The Veterans Court didn't say they would rule. You said that in response to the insufficiency of what they had come forward and said was the solution to the problem? I thought the affidavits were totally in our favor. I thought that was a great time to just shut up, let the court make a decision. You thought they were in your favor? Those affidavits, we thought they were strongly in our favor, Your Honor. They say exactly what we had been arguing for the previous year, that there are multiple systems, that they don't control their systems, that they don't have control over their employees. But the affidavits talked about how they fixed them, how they ensured that there were two different databases and they would synchronize those databases. They went back into the system and, working with you, got the right addresses, the addresses changed for all of your then-current attorneys. But as the affidavits say, they don't control what happens in those databases, and they may have fixed them, but as we had been arguing for a year, those databases aren't the problem. Our address wasn't incorrect in those databases ever. Our address is correct in about ten other databases. All right, why don't we do, we're into your rebuffs time, so why don't we hear from the other side. May it please the Court, The Department of Veterans Affairs is not contending that it didn't have a problem. It did. When the initial petition for writ of mandamus was filed, Veterans Legal Advocacy Group cited 114 instances in which they had mail misdelivered. Subsequent to the correction and the fix that the VA implemented, they were able to provide one. It was provided in connection with their reply. Is the number 200 or 300 today? I heard 20, but we have no evidence in the record. I don't know how to respond to that. We have one mailing that went to the Board, right? What's that? Isn't there one example of a mail intended for the appellant went to the Board of Veterans' Appeals? I think they had filed one in connection with their petition for reconsideration. I was going after the judgment, but in connection with their petition for reconsideration, I think they were able to find an additional one. Do you understand what he's saying? The problem is that it's not cured by the databases because you're not controlling your employees, and so they're not using the database. They're using other stuff? I think that's what I understood. We have a procedure in place. Before the VA, I think it's worth acknowledging the problem that existed before, which was we had various databases. The preferred form was to file a 21-22A in order to update your address. That would be in the claimant file. But at the end of the day, because you might have a different address in the Office of General Counsel file and a different address in the corporate database, an individual who worked for VA sort of had to choose which address they filed, which address they would use, whereas now we've set forth a system in place which has attorneys updating their addresses at both locations at the same time so we shouldn't have inconsistent addresses. The VA employees are required to draw from, if they're at the Veterans Board, to draw from the corporate database. They, in their reply brief, seem to indicate that the Veterans Benefit Management System is a separate database. It's not. The Veterans Benefit Management System draws. Maybe I misunderstood what he was saying. He seemed to be saying that somehow the employees aren't utilizing the databases that have been cleaned up and they're doing something else. Do you know what he was saying? I think given the general lack of problems since we've implemented our fix, it would seem to indicate they're generally not doing that. I don't preclude the possibility that in a 400-person or 400,000-person agency that occasionally an employee may make an error or may get an address from someplace else. That wouldn't be the procedure. Generally, the VA is entitled to a presumption of regularity for these mailings, but it is possible that an error could occur. I do think the Alaska mailing is likely an example of how that can happen. We don't preclude that possibility. How can it happen? If you fixed all the databases and somebody is sending a piece of mail today and the databases have been cleaned up and the right address is there, why does it happen? They're not drawing from the corporate database like they're supposed to. I don't quite know. They look at an old filing that occurred maybe in connection with that client. Have they all been instructed to do so? Yes, absolutely. And they're supposed to be doing this, but they're not. We set forth— Well, is there anything more you could do, or have you already done that, telling employees this is a problem, this is what you have to do? I assume they're instructed through training or otherwise what to do. I honestly do not know what else we can do at this point. Again, acknowledging the problem. When the VA comes up with better solutions, better ways to do this, it continues to work on those. That's why we filed our 28-J letter. Our system is constantly evolving. What if there was a rampant problem? You just have scores of employees that refuse to use the database. They just pick up something that's more convenient, that they happen to see an address on some older piece of paper in the file, and they just use that, and it turns out to be the wrong address. And it happens over and over and over and over again. Shouldn't that be an example of when the Veterans Court should be able to step in and grant mandamus in a situation like that? Well, if it's not—yes, if it's not moot, if the problem is— Did you say yes? Well, if there is a rampant problem in connection with a written mandamus— You heard my hypothetical. Is the answer yes or no? Sorry, I said yes. Okay. I thought I said yes. Okay. If the case is not— You swallowed the yes while you started prattling on about something else. My apologies, Your Honor. I was trying to say yes. Okay. But yes. I mean, if there is a rampant problem, the case isn't moot. That is a case where— So why wasn't it moot here? Because it seems like there were problems before, there were problems after. I mean, there was just kind of an unbroken string of problems. Well, they demonstrated serious problems beforehand. They did not demonstrate that that problem continued. In response to our fix, they initially said nothing, then filed a motion for reconsideration. Many of the errors which they were concerned with were more typographical errors than anything else. But that is consistent with the declarations because at the time, the declarations provided that you draw from the corporate database and manually type in the address. They've identified ongoing problems, so where do you draw the line in terms of what's rampant? Where do you think— Well, the ongoing problems, though, they sought, was the failure to send correspondence to their correct address, not the failure to— I'm not sure it would be— Say, for example, they had filed a petition for a writ of mandamus in which they sought to correct— we were not spelling their name right or we were using— instead of spelling out drive, we were using DR, which is one of the examples that they had in their request for reconsideration. I think they'd have a problem getting mandamus on that. It might not be moot if we were still having manual entry, which at the time we wouldn't have had because the fix for adding a drop-down menu to the BBMS system didn't go into effect until this past November. So at the time, they might have had, for that, a viable petition for writ of— well, they might have had the ability to bring a petition for a writ of mandamus. I'm not quite sure that the Veterans Court in that instance, given the lack of harm, would have been able to grant that petition for writ of mandamus, but they certainly could have brought it. They were concerned about that. So did you understand that the writ that's before— the mandamus petition before us was directed predominantly, if not exclusively, at this Alaska-Indiana problem and this group of attorneys and their— and the fact that there were different databases that people could draw on? Well, I think that was the nature of the problem, yes. I mean, it was— in many cases, Veterans Legal Advocacy Group had the perfect storm where they were generally sending letters to the regional office to try to—to various regional offices to correct their addresses. Their attorneys—they had multiple attorneys who had moved around at various locations. And VA system, unfortunately, was not set up to sort of handle all of that that was going on. That's why we approved the process, though. Okay, and that was—and you represented to the Veterans Court through the affidavits and so forth. We fixed the problem to the best that we can do and understand. The other side says the affidavits didn't—said no such thing. Can you respond to that? I would disagree. I think you do need to read them all together. I mean, I don't see how you get 14 databases out of those affidavits. I mean, if you look at the VA General Counsel's declaration, it spells out clearly what the databases are. That's 425, 427 of the appendix. And it lists the corporate database, which OGC doesn't use, the OGC database, which is used for accreditation purposes. It mentions that the Federal Circuit maintains its system of addresses for cases before it and that they return to the docket sheet for the Veterans Court. But the VA has no control over that. I mean, you can't fix anything. If they have told this court a different address, we don't have any ability to fix that. And we didn't understand their petition as directed at fixing any potential problems or raising any problems with mailings with regards to the Veterans Court or this court. The appellant says they didn't need to respond within the 10-day window after you filed those declarations because everything that was in the content of those declarations, they had already argued ahead of time, that wouldn't be anything near enough of an adequate solution. Do you respond to that? I don't think they really had. I've looked at the oral argument in their filings and I haven't seen anything on that that says you've implemented this fix and it's not adequate. They did almost preemptively say you should tack an extra year on if the case becomes moot in their initial petition. They did say, in fairness to them, that even if this is found moot, even if the problem is fixed, that you should add an extra year before you dismiss that's an issue in order, that keeps effectively the case going even past the point of there being a case or controversy. But I'm aware of no case law that supports simply adding on an arbitrary period to make the case longer moot. Did the CABC observe that they did not raise that again at the appropriate time? They did not raise that again, even in response to the VA's filing. So nothing would preclude them from filing another mandamus petition other than the cost of doing that? No, not that I'm aware of, Your Honor. Are we just talking about two databases or are we talking about more as a practical matter? It's two databases. Again, I don't know where 14 databases comes from. At most you could probably say there are an additional two databases that this court has, again, and that the Veterans Court might have its own sort of listing of addresses. But again, those are not something that the VA has any control over. And I didn't see any examples. Did you mention some corporate database? The corporate database is the database that the Veterans Benefit Management System, VVMS, draws from. So that's effectively the database for VVMS and it's also its own database. And that's what's used by the BVA and the regional offices. The only other separate database is Office of General Counsel for accreditation purposes has sort of its own database. And that becomes relevant when an attorney files their requisite 2122A. The regional office may check to see if the attorney is accredited. And a problem would occur because you might have something on the 2122A and then the OGC database would have something different and the corporate database would have something different. So we had sort of all of these sort of conflicting sources of information. The VA has focused on you do now the mailings from the corporate database or VVMS with the exception of those things that relate to accreditation, which is what the Office of General Counsel keeps for accreditation purposes. One of the other reasons for this conflict was also because the BVA system is claimant specific. So that's one of the reasons why when we went through all of their clients, they had the issues, we wanted to find out who their clients were in order to update them in the corporate database and make sure we had indeed updated their addresses. We needed to look at the clients because the corporate database system is client or file specific, whereas OGC is attorney specific. Does the VA have some kind of electronic docket system where attorneys or claimants can check on the status of a given claim and they can see all the different entries in a given claimant file? I am not certain as I stand here today. We did raise the question of whether- That would be handy, right? Everybody wouldn't be then relegated to being dependent on snail mail to figuring out what is actually going on with the status of a claim. I did get an initial answer that they might have access to Veterans Benefit Management System, but I'm not comfortable saying that they do. I will say it seems to me that in Veteran Legal Advocacy Group's position, I would suspect they don't because they've told their clients to mail them everything. Let's assume it doesn't exist. If there's a medium level problem and then the VA takes some actions and maybe on a superficial view it looks like those actions the VA takes are very reasonable in solving the problem. But it turns out that medium level problem wasn't really completely solved. There still persists a lower level of that same problem. Let's call it a low level problem. We go from a medium level problem to a low level problem. Can it be said that the issue is moot under those circumstances? Yes. I'd love to hear the answer. The reason I would say is because when you implement a fix, sometimes that fix can result in new problems. They would have fixed the original problem, but now a new problem sometimes emerges. That would be subject to a new petition for the mandamus. What if it's the same problem but just fewer instances of that problem? Well, then I guess the court would have determined that they didn't fix it and that would be the opposite answer. The answer would be no in that case. They didn't actually fix the problem. Okay, thank you. Thank you. Your Honor, may I have two minutes? Yes. Just real quick, is there an electronic docket system at the VA where you can just tap in and check out the status of different files? There is, Your Honor. After two years, we were granted access a few weeks ago. However, what we've learned is some of my clients aren't on that system. To check that system, opening documents takes a long time. If the documents are titled correctly, it would be great, but that system is riddled with errors. You can't trust any titles. It is helpful, though, because now when we have a client call and the client is like, I got this rating decision three months ago and you haven't even called me, now I can go in the system, look back, and find that document. So while it's wasting time, it's not wasting four or five hours. It's wasting maybe 30 minutes. But it sounds like a very good safety net, right? Because I think the concern is having to rely on this snail mail. If you can now just go look up in the system, you can figure out what's going on. It's great many times, but it's not. It's maybe 50% of the time. My clients still have to call me and tell me there's a document missing. If my client doesn't call me, what should I do? This has come up in other cases that we've had with VA. How many cases are pending at various levels? I think we're talking hundreds of thousands of cases pending or complaints pending at any given time. Yeah, I believe so, Your Honor. I'm not sure, but there has to be. But a lot of what this gets to, has the VA done a better job? They have. They've done a lot of work to fix this, and it's true. For them to completely fix this is going to be difficult, but whether a case in controversy exists right now or existed in January 2021 doesn't depend on how hard this is for the VA to do. That might be a question for sanctions when they violate the order, but it doesn't make a case moot just because it's difficult for the VA to follow 38 U.S.C. 5104a. There's a statute that tells them to do this. There's six regulations, 38 CFR 14.630 through 636. I guess that's seven. I'm sorry. Those tell them you have to send the mail that is important to litigation to the attorneys or to the clients or the claimant's attorney. These are laws, regulations. They're violating them. Under Article III, Article III doesn't say anything like, case or controversy doesn't exist because it's too difficult for the government to follow the rules. And so the case isn't moot. It never was. Thank you. We thank both sides for their cases.